NOT FOR PUBLICATION                                                                                          CLOSED

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ANTHONY ROBERT HICKS,<br><br>　　　　Plaintiff,<br><br>　　　　　　v.<br><br>LUKE MULHALLAN, PRESIDENT/<br>OPERATIONS MGR. OF PRIORITY<br>EXPRESS COMM.<br><br>　　　　Defendant. | Civil Action No. 07-1065 (SDW)<br><br>**OPINION**<br><br>May 5, 2008 |

**WIGENTON**, District Judge

Before the Court is a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 ("Motion") filed by defendant Luke Mulholland,[1] President of Priority Express.com[2] ("Defendant" or "Mulholland") as to plaintiff Anthony Robert Hick's ("Plaintiff") Complaint.

The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the Court grants Defendant's Motion.

**I.     JURISDICTION**

The Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

---

[1] Improperly pled as Luke "Mulhallan." (Def.'s Pet. for Removal ¶ 2; Def.'s Br. at 4, n.2.)

[2] Improperly pled as "Priority Express Comm." (Def.'s Pet. for Removal ¶ 2.) Priority Express.com hereinafter will be referred to as "Priority Express."

1

## II.    BACKGROUND

On or about January 22, 2007, Plaintiff filed his Complaint against Defendant in the Superior Court of New Jersey, Middlesex County, Law Division.  On March 6, 2008, Defendant removed the action to this Court pursuant to 28 U.S.C. § 1441.

As described by Magistrate Judge Madeline C. Arleo, U.S. District Court, District of New Jersey:

> As best can be gleaned from the Complaint, this civil action arises from Plaintiff's services performed as a courier for Priority Express. The parties dispute whether Plaintiff was an independent contractor or an employee.  Plaintiff alleges that a representative of Priority Express orally promised to pay him a weekly salary range of $600-$900 for services performed.  Plaintiff further alleges that Defendant breached the contract by paying Plaintiff below minimum wage for his services performed.

(Letter Order of Magistrate Jude Arleo at 2, Oct. 11, 2007 ("Letter Order").  Specifically, the Complaint sets forth the following claims: 1) "employment malpractice;" 2) breach of contract; 3) minimum wage violations; 4) "discrimination: violations of constitutional & civil rights"; and, 5) usury.[3]  (Compl. at 8.)  On November 2, 2007, Defendant moved for summary judgment on all counts of Plaintiff's Complaint.[4]

---

[3] Plaintiff later withdrew his usury claim.  (Def.'s R. 56.1 Statement of Facts ¶ 31.)  On June 19, 2007, Plaintiff sought to amend his Complaint to include the following claims: (1) deceptive business practices pursuant to N.J. Stat. Ann. § 2C:21-7; (2) negligent infliction of emotional distress; (3) racial discrimination; and (4) assault pursuant to N.J. Stat. Ann. § 2C:12-1.  (Letter Order at 2.)  Judge Arleo found any amendment to Plaintiff's Complaint would be futile.  (*Id.* at 3.)

[4] Plaintiff did not submit a Statement of Undisputed Facts pursuant to Local Civil Rule 56.1.  *See Longoria v. New Jersey*, 168 F. Supp. 2d 308, 312 n.1 (D.N.J. 2001) (treating the facts appearing in the defendant's Fed. R. Civ. P. 56.1 statement as admitted by the plaintiff, unless disputed in the plaintiff's briefs or contradicted by the evidence).

### III. LEGAL STANDARD

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute is genuine if a reasonable jury could return a verdict for the nonmoving party, and material if, under the substantive law, it would affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 318 (1986).

Once the moving party meets the initial burden, the burden shifts to the nonmoving party who must then set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001). The court may not weigh the evidence and determine the truth of the matter; rather, the court must determine whether there is a genuine issue as to a material fact. *Anderson*, 477 U.S. at 249. In doing so, the court must construe the facts and inferences in the light most favorable to the nonmoving party. *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991).

### IV. DISCUSSION

Based on the record before the Court, there are no genuine issues of material fact in dispute that would preclude summary judgment. As such, the Court will address each of Plaintiff's claims below.

The Court notes that the only named Defendant in Plaintiff's Complaint is Mulholland, yet

3

no specific allegations were made against him. Thus, it is unclear in Plaintiff's Complaint whether Mulholland is being sued individually, or as an official of Priority Express. As Judge Arleo noted: "The Complaint is devoid of any specific allegations against Defendant [Mulholland]. As such, it is unclear who Plaintiff intended to name as a defendant in this action." (Letter Order at 2 n.2.) As Plaintiff is a *pro se* litigant as well as the nonmoving party in this matter, the Court will liberally construe his Complaint and draw inferences in the light most favorable to him. However, for the following reasons, the Court grants summary judgment on all counts for Defendant.

    A.    **Breach of Contract Claim**

Plaintiff asserts that Michael Kates, a vendor coordinator on behalf of Priority Express, orally promised to pay him between $600 and $900 a week. (Pl.'s Compl. at 7.) Plaintiff claims that Defendant breached this contract by not paying Plaintiff the said weekly rate for services performed during the month of August 2006. (*See* Pl.'s Compl. at 7-8.)

Under New Jersey law, "[a] contract need not be expressed in writing as long as the parties agreed to do something that they previously did not have an obligation to do." *Marilyn Manson, Inc. v. N.J. Sports & Exposition Auth.*, 971 F.Supp. 875, 888 (D.N.J. 1997); *see also Radiological Soc'y of New Jersey v. Sheeran*, 175 N.J. Super. 367 (App. Div. 1980). In this instance, Defendant cannot be individually liable for breach of contract. First, Mulholland was not a party to a purported oral contract with Plaintiff. As such, Mulholland could not have agreed "to do something that [he] previously did not have an obligation to do."

Additionally, to the extent that Plaintiff intends to assert that Priority Express breached an oral contract with him, Priority Express cannot be liable as it made no promise or representations that Plaintiff would receive $600 to $900 a week. To the contrary, Plaintiff was informed that he

would "start off" earning approximately $350 a week. (Def.'s Facts ¶ 24.) Notably, Plaintiff himself conceded that Priority Express did not promise him that he would earn $600 to $900, but that Priority Express merely stated to Plaintiff that he had the "potential to earn" that amount. (Def.'s Br. at 21; Def.'s Facts ¶ 24.)

**B.     Discrimination**, **Minimum Wage Violations, and "Employment Malpractice" Claims**

As a preliminary matter, the Court determines that Plaintiff was not an employee of Priority Express, but rather, an independent contractor. Consequently, Plaintiff's discrimination, minimum wage violations, and "employment malpractice" claims fail as a matter of law. The Court's determination of Plaintiff's independent contractor status, as well as his discrimination, minimum wage violations, and "employment malpractice" claims will be discussed in turn.

*1.     Plaintiff's Status as an Independent Contractor*

In determining whether an individual is an employee or an independent contractor, the courts consider the employer's right to control his or her worker. *Carney v. Dexter Shoe Co.*, 701 F. Supp. 1093, 1098 (D.N.J. 1988). Other factors the courts may consider include:

> (1) the kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the "employer" or the individual in question furnishes the equipment used and the place of work; (4) the length of time during which the individual has worked; (5) the method of payment, whether by time or by the job; (6) the manner in which the work relationship is terminated; i.e., by one or both parties, with or without notice and explanation; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the 'employer'; (9) whether the worker accumulates retirement benefits; (10) whether the 'employer' pays social security taxes; and (11) the intention of the parties.

*Id.*; *see also Pukowsky v. Caruso*, 312 N.J. Super. 171, 182-184 (1998) (discussing similar factors).

Upon considering the various factors that are used, the Court finds that Plaintiff was not an employee of Priority Express, but rather an independent contractor. First, Plaintiff controlled the means and methods of his service, indicating that he did not usually work under the direction of a supervisor. Plaintiff was not required to accept any request for delivery from Priority Express. (Speedy Aff. Ex. F at 98:2-3.) In fact, Plaintiff could accept or reject any call by Priority Express for a delivery assignment. (Def.'s Facts ¶ 26f.) Plaintiff also selected the routes, as well as the specific means, for making his deliveries. (Speedy Aff. Ex. F at 67:15-18.) Additionally, Plaintiff was permitted to employ other individuals to assist him in making deliveries. (Speedy Aff. Ex. Y ¶ 4.) As to duration, the agreement was open, and in actuality, Plaintiff provided services to Priority Express for less than a month before terminating the relationship in August 2006. (Def.'s Facts at ¶¶ 15, 27.)

Second, as explicitly provided for in the IC Agreement, the ownership and control of the vehicle used for deliveries resided with Plaintiff. (*See* IC Agreement at 1.) Further, Plaintiff himself was responsible for "expense items which are normal to the costs of doing business, such as tolls, fuel, oil, tires, repairs, garaging, parking, and maintenance of vehicle(s) and other equipment, as well as, rent office overhead, salaries, taxes and any other business expenses that may be required to perform services for the benefit of [Priority Express]." (IC Agreement at 2.)

Third, Plaintiff did not receive a salary; rather, Plaintiff was compensated on a per delivery basis. (Def.'s Facts ¶17.) As the IC Agreement states: "For each completed delivery, the Independent Contractor [i.e., Plaintiff] shall be paid a fee based on the schedule of rates negotiated and agreed to by [Priority Express] and the Independent Contractor." (IC Agreement at 3.) Fourth,

Priority made no deductions for "benefits, health, welfare and pension costs, withholding income taxes, unemployment insurance premiums, payroll taxes" and so forth. (Speedy Aff. Ex. Y ¶ 5.)

Finally, as evidenced by clear and unambiguous language in the IC Agreement, it was the intention of the parties that Plaintiff was to be an independent contractor, rather than an employee of Priority Express. The IC Agreement explicitly provided that:

> The Independent Contractor agrees that *no employer/employee relationship is created* under this [IC Agreement] or otherwise as a result of its relationship between it and SCI or its customers, and that the Independent Contractor is solely responsible for, and shall timely file all required returns and reports and pay, any and all estimated and definitive Federal, State and local income taxes, social security taxes, withholding taxes, payroll taxes, unemployment taxes and any other taxes attributable to or imposed upon Independent Contractor in connection with the services to be furnished by Independent Contractor hereunder.

(*See* IC Agreement at 2.)

For the foregoing reasons, the Court finds that Plaintiff was an independent contractor.[5]

### 2. *Discrimination Claim*

As an independent contractor, Plaintiff is not an "employee" and therefore, not protected under Title VII or the New Jersey Law Against Discrimination ("LAD"). *See Pukowsky*, 312 N.J. Super. at 178 ("[F]ederal cases interpreting Title VII, the LAD, and similar laws seem to uniformly hold that independent contractors are not 'employees' within the meaning of the anti-discrimination statutes."); *E.E.O.C. v. Zippo*, 713 F.2d 32, 36-37(1983). Even if Plaintiff could seek protection from these statutes as an independent contractor, Plaintiff still fails to sufficiently allege a proper

---

[5] Plaintiff relies heavily on a notice from the New Jersey Department of Labor and Workforce Development that found that an "employer-employee" relationship existed in order to determine he was eligible for benefits. (Pl.'s Opp'n at Ex. 1) However, such a determination is not binding on the Court's analysis in this matter.

discrimination claim under either Title VII or LAD. Plaintiff merely claims "discrimination: violations of constitutional & civil rights." (Pl.'s Compl. at 8.) However, as Defendant maintains: "Plaintiff's [C]omplaint is blatantly missing *any* reference to *any* protected characteristic which could reasonably form the basis of Plaintiff's discrimination claim." Plaintiff's discrimination claims are not supported by his pleadings, the record or law. As such, Plaintiff's assertions and beliefs are not sufficient for his discrimination claim to survive.

To the extent that Plaintiff intends to allege discrimination based on race,[6] Plaintiff failed to exhaust administrative remedies as required under federal anti-discrimination laws. *Robinson v. Dalton*, 107 F.3d 1018, 1020 (3d Cir. 1997) (holding that a plaintiff must exhaust all prerequisite administrative remedies with the EEOC before bringing a claim for judicial relief). As Judge Arleo stated: "Plaintiff may not pursue his federal discrimination claim in this Court because he did not first file the required Equal Employment Opportunity Commission (EEOC) charge asserting discrimination claims pursuant to Title VII of the Civil Rights Act." (Letter Order at 4.)

### 3. Minimum Wage Violations Claim

Plaintiff claims that Defendant committed "minimum wage violations." (Pl.'s Compl. at 8.) However, as an independent contractor, Plaintiff is not protected under the Fair Labor Standards Act ("FLSA"), which applies only to *employees* of covered employers. *See* 29 U.S.C. § 201; *see also Donovan v. DialAmerica Mktg., Inc.*, 757 F.2d 1376, 1386 (3d Cir. 1985). The Court in *Donovan* utilized the following six factors in determining whether a worker is an "employee" under the FLSA:

> 1) the degree of the alleged employer's right to control the manner in

---

[6] In Plaintiff's request to amend his Complaint, Plaintiff sought to specify his discrimination claim as one based on his race. As previously explained, Judge Arleo denied Plaintiff's request to amend his Complaint on grounds of futility. (Letter Order at 3.)

>which the work is to be performed; 2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; 3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; 4) whether the service rendered requires a special skill; 5) the degree of permanence of the working relationship; 6) whether the service rendered is an integral part of the alleged employer's business.

*Id.* The *Donovan* court stated that "neither the presence nor absence of any particular factor is dispositive and that courts should examine the 'circumstances of the whole activity,' and should consider whether, as a matter of economic reality, the individuals 'are dependent upon the business to which they render service.'" *Id.* (citations omitted). Even under FLSA's broad definition of "employee,"[7] and in light of the economic reality of Plaintiff's employment relationship with Defendant, the Court concludes that Plaintiff is not an "employee" under the FLSA.

Plaintiff is likewise exempt from the protection of state labor laws. *See* N.J. Admin. Code § 12:55-1.2; 34:11-41(b) (specifying that "independent contractors and subcontractors shall not be considered employees"); *see also Carpet Remnant Warehouse, Inc. v. New Jersey*, 125 N.J. 567, 572-73 (1991). Under the so-called "ABC test" as utilized by the court in *Carpet Remnant*, an individual is an independent contractor when the following is satisfied:

>(A) Such individual has been and will continue to be free from control or direction over the performance for such service, both under his contract of service and in fact; and
>
>(B) Such service is either outside the usual course of the business for which such service is performed, or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and
>
>(C) Such individual is customarily engaged in an independently

---

[7] In Donovan, the Third Circuit noted that "of all the acts of social legislation, the Fair Labor Standards Act has the broadest definition of 'employee.'" 757 F.2d at 1382.

established trade, occupation, profession or business.

*Carpet Remnant Warehouse, Inc.*, 125 N.J. at 572-73. For much of the same reasons discussed in IV.B.1. *supra*, the Court finds that Plaintiff satisfies the ABC test so as to be deemed an independent contractor under state labor laws.

        4.      "Employment Malpractice" Claim

Neither Defendant nor the Court is able to discern Plaintiff's "employment malpractice" claim. Defendant claims that "Plaintiff's own admission contained in his deposition testimony establishes that his 'employment malpractice' claim is nothing more than a 'restatement' or repetition of his failure to pay minimum wage, breach of contract and discrimination claims, and is therefore improper and futile." (Def.'s Br. at 8.) To the extent that it is a restatement of all his claims against Defendant, which the Court has dismissed, Plaintiff's "employment malpractice" claim, as well as a purported CEPA violation, necessarily fails. Furthermore, because Plaintiff cannot point the Court to an "employment malpractice" cause of action which any court has recognized, Plaintiff's "employment malpractice" claim must be dismissed.

        5.      CEPA Claim

Plaintiff alleges that he performed whistle blowing activity in violation of the New Jersey Conscientious Employee Protection Act ("CEPA"). (Pl.'s Opp'n at 4.) Plaintiff has not properly asserted a claim under CEPA. First, the CEPA claim was not properly pled as it appears to be raised for the first time in Plaintiff's Opposition to Defendant's Motion. (Pl.'s Opp'n at 4); *see also* Fed. R. Civ. P. 15(a). Plaintiff even failed to include a claim of a CEPA violation in his request to amend in June 2007. (Mot. to Amend, June 19, 2007.)[8] Plaintiff cannot now improperly amend his Complaint

---

[8] Plaintiff's June 2007 request to amend was denied by Judge Arleo. (*See* Letter Order.)

without leave of the Court and notice to his adversary.

Second, even if the Court were to recognize Plaintiff's attempt to assert a CEPA claim or construe his arguments as a request to amend, the proposed claim would fail as a matter of law. CEPA provides protection to individuals who are determined to be employees by the factors previously discussed. *See D'Annunzio v. Prudential Insur. Co.*, 192 N.J. 110 (2007) (holding that the *Pukowsky* test determines whether an alleged independent contractor is an employee protected by CEPA). As discussed, the Court has determined that Plaintiff was an independent contractor, and not an employee, pursuant to these factors.

Pursuant to CEPA an objecting employee must have an objectively reasonable belief that at time of objection that employer's activity is either illegal or violates a clear mandate of public policy. *See Mehlman v. Mobil Oil Corp.*, 153 N.J. Super.163, 185, 188-89 (1988). Notably, Plaintiff declined to accept delivery assignments from Priority Express and did not allege retaliatory discharge. (Def.'s Facts ¶27.) Additionally, Plaintiff failed to identify a valid public purpose as required under CEPA. *Mehlman*, 153 N.J. at 188.[9]

## V. CONCLUSION

For the foregoing reasons, Defendant's Motion is granted. All counts against Defendant,

---

[9] Plaintiff's proposed CEPA claim also appears to be time barred by a one year statute of limitation. *See* N.J.S.A. 34:19-5 ("Upon a violation of any of the provisions of this act, an aggrieved employee or former employee may, within one year, institute a civil action in a court of competent jurisdiction.")

including Plaintiff's request for punitive damages, is hereby dismissed.

s/Susan D. Wigenton, U.S.D.J.

cc: Magistrate Judge Madeline C. Arleo